

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable G. A. Neal
County Auditor
Ellis County
Waxahachie, Texas

Dear Sir:

Opinion No. 0-5863
Re: Whether the Permanent
Improvement Funds of the
County can be used to buy
property for housing road
machinery and equipment;
and a related matter.

Your letter of February 9, 1944, requesting the opinion of this department on the questions stated therein reads in part as follows:

". . . .

"Ellis County has assessed and collected a Permanent Improvement Tax, as provided under the Statute. At present we have, in the Permanent Improvement Fund, several thousand dollars.

"The County Commissioners in the different precincts are renting, from individuals, a place where the road machinery and other equipment may be kept. At the last regular meeting of the Commissioners' Court, an order was passed, providing that a certain amount of this Permanent Improvement Fund be used to buy certain property for the housing of each particular Commissioner's road machinery; with the understanding, however, that the Commissioner's precinct pay to the County, a reasonable amount each month as rent.

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT



Honorable G. A. Neal, Page 2

"The two questions to be answered are:

"(1)   Can the County use the Permanent
Improvement Funds to buy this property?
"(2)   If so, would the Commissioner's
precinct be required, under the law, to pay
the County rent on the above named property?

". . . ."

From the information contained in your original
request and two later communications received from you rela-
tive thereto, it is apparent that the Commissioners' Court
levied a tax and designated it for "permanent improvements"
without specifying that it was to be expended for any par-
ticular permanent improvement as is sually done.  Therefore,
it follows that the Permanent Improvement Fund of the county
may be expended for any "permanent improvements" which the
Commissioners' Court may legally see fit to make.  Having
reached this conclusion, we now consider your first question.

We think there can be no question about a building,
including the land upon which it is erected and such additional
land as may be necessary to effectuate the purpose for which
the building is to be used, purchased or erected for the pur-
pose of housing the county's valuable road machinery, equip-
ment, tools and supplies used for road building and mainten-
ance purpose is a "public permanent improvement" within the
meaning of that term as used in Section 9, Article VIII
of our Constitution, limiting the annual rate of taxation
which may be levied by the county for such purpose, and in
Article 2352, Vernon's Annotated Civil Statutes, authorizing
Commissioners' Courts to levy a maximum tax for such purpose.

You are therefore advised that it is our
opinion that your first question, under the facts submitted
and as we understand them, should be answered in the affirma-
tive, and it is so answered.

You are further advised that the Road and
Bridge Fund of the county may also be legally expended for
such purpose, since the very purpose of the contemplated
expenditure is for the protection andt preservation of road
building machinery, equipment, tools and supplies, all of

Honorable G. E. Neal, Page 3

which are essential to the construction and maintenance of
the county roads and bridges, the very purpose for which
said fund is created under both the Constitution and statutory
provisions cited above.

We now consider your second question.

The courts of this State have often held that Com-
missioners' Courts have no authority except that conferred by
statute or by the Constitution and those powers necessarily
implied therefrom. We know of no law that would authorize
the Commissioners' Court to exact rental from each Commission-
er's precinct for use of the building proposed to be purchased
or erected by the county for the purposes heretofore stated,
therefore, such rental may not be collected.

In connection with the foregoing answers to the
questions propounded by you, it is noted, that you state in
your letter of April 1, 1944, supplementing your letter, a
part of which is quoted above, you state in part as follows:

"The Budget does not provide for the purchase
of buildings for the housing of County machinery."

As we understand your foregoing statement, you
state in effect, that no provision is contained in the County
Budget providing for the expenditure of funds of the county
for the purpose of erecting or buying property for housing
road machinery, equipment, tools and supplies. Generally
speaking, no expenditure of the funds of the county shall
be made except in strict compliance with the Budget as adopted
by the Court, except emergency expenditures, in case of grave
public necessity, to meet unusual and unforseen conditions
which could not, by the reasonable diligence, thought and
attention, have been included in the original budget. (Art.
689a-11, V. A. C. S.).

It will be noted as stated above that generally
speaking no expenditure of the funds of the County shall be
made except in strict compliance with the Budget as adopted
by the Court except to emergency expenditures, in case of
grave public necessity, to meet unusual and unforseen con-
ditions which could not, by the reasonable diligence, thought

Honorable C. A. Neal, page 4

and attention, have been included in the original Budget. Before the above mentioned expenditures can be made legally, such expenditures must be provided for in the Budget. Whether a grave public necessity now exists authorizing the Commissioners' Court to amend the Budget to provide for the above mentioned expenditures is a question to be determined solely by the Commissioners' Court under the existing facts and Art. 689a-11, V. A. C. S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

AW:fo



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN